The last case on our argument calendar is New York University v. Galderma Laboratories. Good morning, Your Honors, and may it please the Court, Charles Michael for Galderma, the Court was correct to grant summary judgment before any discovery on the question of whether Galderma's pharmaceutical product, called Oratia, falls within a license agreement between Galderma and NYU. We respectfully submit that NYU did not carry its burden on summary judgment, particularly in light of the powerful evidence before the District Court that Oratia is not a licensed product. The definition of licensed product in the license refers to only products that are, quote, covered by a claim, close quote, of the licensed patents. Did anyone do any examination of whether Oratia is covered? None whatsoever, and that is precisely the problem, Judge Pooler. They got summary judgment against you before you had any discovery. Exactly. There's a question as to whether the bioequivalent generic, which was found in the Delaware District Court and affirmed on appeal to not be employing the Amon patents, which NYU owns, did not employ the Amon patents, and so, therefore, wasn't covered on . . . didn't infringe, therefore, there were no fees. But there's no determination here that . . . how do you pronounce it, Oratia or . . . Oratia. Oratia, that Oratia does or does not employ the patents. Interesting, probably, there's . . . I don't know what the implications of bioequivalency is, but there's no way of knowing that. Now, they're entitled to recover, that that wasn't determined, but it seems odd that Judge Hellerstein would decide that and a jury wouldn't, without any proof or discovery. It seems odd to me. That's precisely, and that's precisely what's odd. Now, to be clear about what we're contending here, the Delaware case did involve a bioequivalent and did find that the generic version of Oratia was not covered by the Amon patents. We are not here, before this Court, to say, find as a matter of law that what happened in Delaware decides this issue. All we're saying is, boy, look at what happened in Delaware, and that's very good reason to think that there's at least, at least a fact question. Judge Hellerstein seemed to go on the fact that in your Juarez Clause, you were agreeing that you were bound, and . . . but New York law says that the Juarez Clause does not determine. Isn't that right? That is precisely it. So Judge Hellerstein issued a summary order, so we don't have written reasons, but at the argument, the transcript is in the record, page 952. It's quite clear that that's what drove his decision. And you can look at this Court's case law interpreting New York law, the Hamdy case, the Jim Booten case, the Aramany case, all of which say, whereas clauses can . . . that we cite the New York Court of Appeals for New York law, then our view . . . our views . . . a view, but not determinative. The New York Court of Appeals has specifically held that resettles are akin to admissions regarding the party's intent, as opposed to they can be explained or disputed by parole evidence. That's Ehrlich at 26 New York 2nd, 255-258. So the Juarez Clause, in your view, recites an assumption of a fact upon which the licensing agreement is premised. You say that fact was no longer established. You stopped paying. Exactly. And it's important to remember, Your Honors, the license was signed in 1998. Oratio wasn't conceived in anyone's mind. It wasn't released until 2006. So yes, the whereas clause, which was then written in 2009 . . . You can't change the operative words of the contract, can you, the whereas clause? Exactly. That's the whole point. So it's true . . . Unlike the . . . I don't . . . that other case that they're relying on, the whereas clause was not . . . the fact that Oratio does employ the patents, or presumed that it did employ the patents, was not then incorporated into the definitions of a licensed product in the agreement itself's definitions, was it? It wasn't. We would have a very different case if instead of it saying whereas Oratio is a licensed product, it said the parties hereby amend the license agreement so that licensed product means Oratio. They didn't say that. They didn't say that. They believed it met the definition at the time. Turns out they were mistaken. But they didn't agree to change the contract. That's the key point. And yes, the New York Court of Appeals has held that. We discussed extensively . . . It's a slightly different thing. The claim for violation of duty of good behavior in a contract . . . Sure. That was held . . . that was thrown out as being duplicative of this. But wasn't there a claim by NYU that you failed in the initial action to bring in . . . the Delaware action to bring in witnesses and so on? Isn't that a separate claim of bad behavior which would survive even apart from the contract? It wouldn't, Your Honor. And that's because NYU specifically pleaded what I'll call bad lawyering in the Delaware case as an explicit breach of explicit contract provisions. That's at paragraph 65 of their complaint. Appendix page 30, they said in what . . . Galderma breached the contract, quote, because of Galderma's conduct regarding the suits, close quote. And that's following a long discussion of how we did a lousy job at trial. Is it possible that a lousy job at trial could not constitute a breach of a contract? I mean, you know, we don't usually read a contract as being breached because of lousy behavior at trial, and yet that constitutes bad behavior independent of it under this. Respect . . . I understand their pleading tried to make it part of a contract. But the fact that it doesn't make it part of a contract doesn't necessarily mean it doesn't have some value apart. Sure. I understand the question, Your Honor. I think when they explicitly plead it, that makes it duplicative. But in addition, I would point out, as Judge Hellerstein said, again, this wasn't in a written decision, but I believe in the transcript, he says, how can it be bad faith when NYU was a party to the case, could have hired its own lawyers? There's no requirement in the contract. And I think he would respectfully rewrite the contract to impose some standard of good lawyering. NYU could have directed the litigation to proceed however it wanted. So it seems peculiar in the small . . . It fails as a matter of law. That's a different argument. It's not saying it's in the contract. It says, you know, how could they have made out this claim when they could have done something else? Okay. Right. I would just phrase it slightly differently, that it's the type of claim that would effectively amend the contract and so doesn't fit within. I see my red light is on. You have reserved some time for rebuttal. I've reserved three minutes, yes. Okay. I will hear from New York University, especially on the fees issue, and you'll have some time in rebuttal to talk about it. Andrew Zappia from LeClaire Ryan. May it please the Court. Your Honors, it's important to look at the amendment to the license agreement in total. Under contract interpretation principles, we're supposed to look at the agreement in total, and the recitals also inform the party's understanding of operative provisions. So, the timing of the amendment is important to consider because in March of 2009, Galdermo asked NYU to join certain enforcement actions against generic drug companies. Then the amendment was entered into in June of 2009. And in the amendment, there is the whereas clause, already discussed, stating that under trademark oratia is licensed product, as that term is defined. That whereas clause informs our understanding of operative provisions in the amendment that address the status of oratia as an agreed licensed product in the amendment. I can't amend the contract, can it, the whereas clause? Well, Your Honor. That's not what you're asking. You're asking really to amend the language of licensed product. No, Your Honor. Respectfully, what I'm asking is that the court understand the import of that recital when looking at paragraph four of the amendment. All that says is that there is an argument that can be made your way. How does it get to a contract that is so clear that you can get a summary judgment immediately without any discovery, without anything else, in the light of what Delaware said about this? I mean, I understand that this is relevant, but how is it determinative? So, Your Honor, a number of cases, including the cell port decision and metrologic decision, talk about if parties to a license agreement agree that a specific product or a specific set of patents will generate a royalty, that that's enforced but without the need to do an infringement analysis. If you look at paragraph four of the amendment, we have the recital, and we understand what the recital says is that acknowledgment that oratia is a licensed product. Then paragraph four, which deals specifically with royalty payment, talks about, with quote, for royalties with respect to net sales of oratia after June 30, 2009. The parties are discussing in an operative provision the payment of royalties with respect to net sales of oratia. The parties could have said licensed product there. They said oratia. And at the end of that, again, quote, the payment of royalties to NYU with respect to net sales of oratia. In the amendment, the parties expressly use oratia. I understand why you're saying that, but that still doesn't get you out, I think, of the problem you've got with the whereas clause, because the whereas clause states an assumed fact. It states an assumed fact that oratia is a licensed product. That doesn't say the New York law is clear that you can explore whether that was true or not through parole evidence. This is not the stuff of summary judgment. You might win later on that the parties had long discussions and they'd had plenty of opportunity to look at this. And, indeed, oratia does practice the amendment patents. But the fact that the parties assumed it but then didn't redefine the covered products, I don't see how you get to shoehorn the recital clause in. I understand what you're saying. If you took the recital clause out and just said they're going to pay royalties for the sale of oratia, then maybe you've got a better argument. But the whereas clause recites an assumption of a fact. Your Honor, the whereas clause, I believe, is helpful in understanding the import of Section 4. Let me ask you this. If the proof showed that the parties operated under a mutual mistake of fact, they both operated under the mutual mistake of fact that oratia did practice the patents, which was later proven to be not true, is there an agreement under contract law? So that's not true. The mutual mistake of fact is a ground for rescission under New York contract law, is it not? Yes, Your Honor. There you go. So isn't that exactly what you have here? Your Honor, if we go to paragraph 6 of the amendment, paragraph 6 expressly references oratia in the context of being a licensed product. It says, With respect to any licensed product at any time upon 60 days prior written notice to NYU, provided, however, that such right to terminate and revert shall not apply with respect to oratia. The parties in an operative provision are referring to oratia as a licensed product. So your view is that they didn't make a mutual mistake of fact. This is an agreement to pay for oratia regardless of whether it practices the patents. Your Honor, that's the import. That's the effect of the amendment. It is possible to read it that way, but I'm not sure that it is clear enough to read it that way that we can affirm a decision as a matter of law. Well, Your Honor, in the Cellport case, there was a similar acknowledgment that a particular group of products By the way, did Judge Hellerstein place his opinion on section 6? Your Honor, it was raised with Judge Hellerstein, but he did not rely on it. He didn't tell you very much at all, did he? So Judge Hellerstein thought the recital You were happy with it. I don't blame you for being happy with what you won, but he didn't tell you a lot, did he? So we raised it, and I can point to DACA 1 and 2. No, I'm not saying you didn't raise it. You raised it. You did a very good job. You represented your client very well. This is well lawyered. This is a nice little New York Patentingly well lawyered. Patentingly well lawyered. About a patent, but not really about a patent at all. But our view is that the amendment establishes And if you look at the parties intent with the amendment, Galdermo was asking NYU to put its patents at issue in enforcement actions. And NYU in the amendment said, Okay, acknowledge it's a licensed product, pay us royalties on it, and also in section 6 you can't terminate that obligation with regard to erasure. The purpose of the amendment was to protect NYU's rights and royalties on erasure based on Galdermo's request that NYU's It's an assumption that erasure practiced the patent. We would say agreement, but I understand. The minute it introduces an ambiguity, you're back assessing the credibility of their assertion versus yours. That's all. You might very well win, but obviously I'm having a bit of a hard time with this because Judge Hellerstein made a clear mistake on New York law. He said the whereas was in essence, it solved the matter. It doesn't. I understand. That is a crystal clear mistake of New York law. And given my background, I have trouble when that happens. And I understand that perspective. My point is that if you go to the operative provisions and read them in context with the whereas clause, it's clear that what the parties intended is that royalties would be paid on erasure and that Galdermo couldn't terminate that obligation. The question is, can we say, despite that mistake of law, that he could have, not could have, but should have come out the same way regardless of it. And it's there, but I'm not so clear that the matter is clear. But could you spend a little time telling me what the suit means? On the attorney's fees issue? Yeah. What the word suit is because I'm having a little trouble from both sides of that. So, Your Honor, if you look at the attorney's fees provision section 13B, it discusses that if a party asks the other party license agreement to join a litigation, that any and all expenses will be covered by the party initiating the suit, entirely by that party asking to initiate the suit, and that the other party joining will be held free, clear, and harmless from and against any ill cause of such litigation. Now, here there's no dispute Galdermo elected to start the suit. There's no dispute that they asked NYU to join the suit. But Galdermo's position is, in essence, that they have the right at any time to elect not to pursue phases of the case. And if they make such an election, then NYU is no longer entitled to attempt the case. The contract deals with this very eventuality, doesn't it? Well, Your Honor, it talks about electing a suit, but I don't think anywhere in the contract it says that Galdermo, once having elected to bring a suit, can cease. Does electing a suit mean that you have to take that suit through every possible appeal and then ask for cert to the Supreme Court? And then, you know, how much, what is your responsibility when you elect a suit? Do you have to go on forever, or can you stop? That's what I'm not clear on. Well, Your Honor, I mean, we cite a basic reference on this point, Black's Law Dictionary, obviously, that talks about a suit as a proceeding and defines proceedings to include both trial, court, and appellate. It's about the legitimacy of your patent in the appeal, and you won. That is correct, Your Honor. Right, and the contract says any expense in conjunction with the suit, doesn't it? It says litigation. And it further says that if Galdermo starts the lawsuit and they seek to settle it, they can't do so without your permission. That is correct, Your Honor. So, I mean, it's any expense of a lawsuit of a successful appeal defending the patent which you own and they licensed. So your view is that any expense includes, there's no claim that it was a frivolous appeal. No, we prevail. Without any basis in law, it couldn't be because you won. And Galdermo. It seems to me that you did them a favor because you protected the patent which they licensed. They can use it for other covered products. That's correct, and that's why we feel they should pay. And even on the remand proceeding after the vacated decision, Galdermo refused to pay the attorney's fees on remand of the lawsuit they initiated, and they still wouldn't pay those attorney's fees. Is this a question on which the terms might be viewed as ambiguous and that knowing something about the understanding of the parties would be helpful, or is this a question that we can decide suit means what you say or suit means what I expect the other side will say? I'm sorry. My time is up. Would you like me to answer that? You can finish. Your Honor, the court did allow limited discovery on this, and the parties adduced no evidence that there was any specific discussion on a specialized meaning of suit. So the court then went forward and construed the contract based on plain meaning and determined that it was appropriate to grant summary judgment on count two. But your guy who wrote the agreement, who also has worked in this field for a long period of time, explained why this was in here, right? Yes, we did put in a report on that. Galdermo's report was stricken because the court viewed it as giving a legal opinion on contract construction. Yeah, that's not completely clear that that's what their expert was doing, but it could be argued. Okay. Thank you. Thank you. Mr. Michael, you've retained three minutes for rebuttal. Sure. Talk about the fees first, if you would. I will, and I'll just pick up on what my adversary just said. It's true our expert was stricken. It's also true that their expert was stricken. Judge Hellerstein said, I don't want to hear from either experts. And we respectfully submit. He wasn't interested in anything other than the whereas clause. Right. Right. Exactly. Whereas, Judge Hellerstein. That's exactly right. And we submit that the experts should be put before a jury and this is not summary judgment material. Now, there's a lot of focus here on the word suits, but I think suits has to be read in context. It suits that a party elects to bring. And there are mirroring provisions. 13B talks about suits we elect to bring. 13D suits they elect to bring. Do you get a benefit from the appeal? No. The patent's still good, so you've got a license to use it, don't you? The appeal affirmed that it doesn't cover the only product we make. I understand that, but it reversed the district court with regard to the legitimacy of the patent. Right? Right. So I guess I would say we got no infringement, but it found that the patent was legitimate. Correct. It found it was valid. So we got what I'll call it. You did get a benefit. Well, I'd call it a theoretical benefit because we don't use it. Well, some people choose to pick up a hammer and some don't, but they still own the hammer. Fair enough. So, yes, it converted the benefit insofar as now there's a valid patent. The license has expired. But, sure, from the period the Federal Circuit ruled, the patent was theoretically usable. That is true. But the issue is not what does suit mean. It's about who elects to bring. And my adversary said, you know, on our reading, we could just drop the suit at any time, just decide. That's not true because the license agreement says we can't settle or compromise the suit without their consent. We didn't do that. It's a very different thing to let a suit run all the way to a final and enforceable judgment and then make a separate and new election, which is the way we view it, to go to a different court, pay a different filing fee, and challenge that judgment. I don't think people think of their lawsuit as just what happens at the district court if there's a possible appeal, part of which they might win. I think you're parsing the word suit pretty narrowly. Well, respectfully, Your Honor, I wouldn't view it. I don't see this as a separate proceeding from what you had in front of Judge Hellerstein. This is just more of the same. I would say it's a different proceeding that NYU elected to bring. Do you think you brought a ñ in filing your notice of appeal, do you think you started a new action in the Second Circuit, or do you think this is just a continuation of an attempt to vindicate your rights that were wrongly denied you in the district court? I'd say it's a new proceeding with a new docket number and a new courthouse. Really? Because if we disagree, if you win, it's going back to the same place where you started. It sounds to me like you're back in the same place with the same judge, with the same dispute that you're arguing against. It sounds to me like you're back to the future. You're back in your lawsuit all over again. I agree. We'll be back to the future. Go ahead. Suppose we did it the other way, and so you were not the one choosing to appeal, but the other side chose to appeal, and at that point you said, well, frankly, we don't want to do that. Now, that would be clearly pulling out under the contract, wouldn't it? That would be under your contract with them, doing the thing which you cannot do without their permission, wouldn't it? They are appealing, and you say, we're not going to fight it anymore. I'm not sure that would constitute a settlement or a compromise. I feel like a judgment. You mean you think that you would have that right, that you won, they appeal, and you say, sorry, kids, we're not paying for anything anymore. Oh, I apologize. I misunderstood your question. You mean basically laying down on an appeal and letting it be reversed. Well, I don't know. Say, we're not going to pay. If you don't want it to be reversed, you go ahead and pay. Okay. I understand your question. That might be a different analysis to whether that, you could say, compromises the judgment. Isn't there something odd about saying that what you call what you agreed to allows you to stop if you've lost but must continue if you've won? It seems like an odd way of reading that contract, doesn't it? I don't know if it's an odd way because you're talking about two different ones, two different provisions. You'd want us to read it. I would say it's potentially compromising the lawsuit to take a dive, so to speak, on an appeal. Absolutely. But that provision isn't implicated when you've lost at the district court level. Okay. Thank you. Thank you both. We'll reserve decision. The last case on our calendar is on submission. So I will ask the clerk to adjourn. Court is adjourned.